IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. _____

RESIDENCES AT OLDE TOWN SQUARE
ASSOCIATION

     Plaintiff,

v.

TRAVELERS CASUALTY INSURANCE COMPANY
OF AMERICA

     Defendant.

_____

## COMPLAINT AND JURY DEMAND
_____

COMES NOW, the Plaintiff, Residences at Olde Town Square Association ("Residences at Olde Town") and submits the following Complaint against Travelers Casualty Insurance Company of America ("Travelers"):

## I.     PARTIES

1.     Plaintiff, Residences at Olde Town, is a Colorado non-profit corporation whose principal offices are located at 10701 Melody Drive, Suite 315, Northglenn, CO  80234.

2.     Residences at Olde Town is a homeowners' association which manages real property located at 5192 Ammons Court, Arvada, CO 80002, generally consisting of all structures, which primarily consist of condominiums ("the property").

3.      Travelers issued a policy insuring Residences at Olde Town pursuant to policy 680-004F97913A ("the policy").

4.      Residences at Olde Town suffered a covered loss under said policy on or about May 8, 2017 ("date of loss").

## II.      JURISDICTION AND VENUE

5.      The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states (Colorado and Connecticut).

6.      Travelers is a foreign corporation who is a citizen of the State of Connecticut and whose registered agent is the Division of Insurance for the State of Colorado.

7.      Venue is proper because the property and dispute involving the property and most material actions occurred within the State of Colorado.

## III.      GENERAL ALLEGATIONS

8.      Shane Hamm at all times was a representative of Residences of Olde Town acting on behalf of Homeowners Concerns.  Homeowners Concerns is a managing agency which contracts with the Residences at Olde Town and whose principal address is 10701 Melody Drive, Suite 315, Northglenn, CO  80234.

9.      Homeowners Concerns is a trade name for Boyd Industries, LLC, which is a Colorado limited liability company.

10.      The policy issued by Travelers insuring Residences at Olde Town is attached hereto and incorporated herein as Exhibit 1 and generally consists of 37 pages ("the policy").

11.   Residences at Olde Town submitted a commercial insurance application to Travelers which is attached hereto as Exhibit 2 and incorporated herein and generally consists of 47 pages ("the application").

12.   Travelers prepared a statement of loss outlining the covered losses from the date of loss and estimating that $110,497.41 was due under the policy ("Travelers' first estimate").

13.   Travelers retained the services of Stephenson Consulting Group ("Stephenson") who acted as an agent on behalf of Travelers to estimate the amount of covered losses at the property covered by the policy on the date of loss.  Stephenson went to the  property twice and spent a day with a contractor representative Kelle Cozart, of ASR discussing needed repairs.

14.   Travelers based its first estimate upon Stephenson's preliminary repair estimate dated August 17, 2017 and an inspection by Travelers. In sum the estimate was based upon 3  visits to the property and other information.

15.   On August 17, 2017, Travelers forwarded its assessment of covered losses to Residences at Olde Town.  Travelers applied recoverable depreciation of $160,915.30 and a deductible of $206,673.38.  It estimated the full cost of repair or replacement at $478,086.09.  Travelers calculated that the amount owed to Residences at Olde Town was $110,497.41 for Actual Cash Value ("ACV").

16.   In June 2017, Residences at Olde Town entered into a contractual relationship with a contractor, ASR Companies Inc. ("ASR"), to provide construction services for the covered loss.

3

17.     In June 2017, Residences at Olde Town entered into a contractual relationship with a contractor, Premier Roofing Company ("Premier"), to provide construction services for the covered loss.

18.     On or about September 13, 2017, ASR prepared an estimate of work that needed to be performed in order to repair the damage caused by the covered loss.  That estimate amounted to $735,467.88, not including permits.  This estimate did not include a deduction for depreciation or deductible.

19.     This estimate was forwarded by ASR to Travelers in approximately September of 2017.

20.     The Residences at Olde Town reviewed the deductible applied by Travelers in September 2017.  In so doing, they determined that the deductible of two percent (2%) was based upon a calculation known only to Travelers.  Travelers calculated that the value of the property of the Residences at Olde Town had increased.  More specifically, Travelers and Residences at Olde Town had previously agreed that the value of the insured property as of December 23, 2016 was $7,426,300.  However, Travelers calculated that the value of the property on the date of loss had increased by approximately $2,600,000 over a course of approximately four months and 13 days.

21.     At no time did Travelers disclose any reduction in coverage or payment obligations from the time it issued the policy until the date it estimated its obligations for payment on or about August 17, 2017.

22.     C.R.S. § 10-4-111 and Bulletin B-5.15 requires that a summary disclosure form be given by Travelers to Residences at Olde Town listing reasons for increase in premiums or reduction in coverage.

23.     C.R.S. § 10-4-111 provides that an insurer shall provide notice of any reduction in coverage as required by said statute.  Failure to do so is a deceptive practice as generally described in C.R.S. § 10-3-1108 and C.R.S. § 10-3-1109.

24.     Travelers gave no notice of the increase in deductible of approximately $58,000 or the basis for increase in deductible between the date the policy was issued and the date it calculated amounts due for the covered loss.

25.     Colorado law requires that any exclusion or limitation in coverage be made in clear and understandable terms that would be understood by an ordinary person.

26.     Here, the policy provides that windstorm or hail deductible is determined pursuant to business owners endorsement MP T1 75 03 06.  Said endorsement provides that the value of the property used to calculate deductible would be those shown in a statement of values on file with Travelers.

27.     If said statement of values existed, it was never disclosed.

28.     Said endorsement provides that if there is no statement of value on file with Travelers, then the value to be used would be the value of the property at the time of the loss.

29.     At no time did Travelers disclose that it calculated the value of the property or how it calculated the value of the property either at the time of issuance of the policy,

prior to time of issuance of the policy or after issuance of the policy and its calculation of amounts due for damages to the property for the covered loss.

30.    On or about September 6, 2016, Travelers prepared an estimate involving ASR and Highland Walk Condominium Association.  This estimate reflected reasonable and ordinary items included in connection with repair or replacement of covered losses at the property for Residences at Olde Town. Also on or about September 6, 2016, ASR provided Travelers with an engineer's report to Stephenson for the installation of finned windows installed in stucco.

31.    On or about September 13, 2017, ASR provided Travelers with an estimate for hail damage repairs to the property which were covered under the policy.

32.    ASR provided to Travelers a comparison of the estimate of Travelers to that of ASR in September of 2017.

33.    At all times relevant, at the time the policy was issued, the Residences at Olde Town had finned windows.  Finned windows contain an additional safeguard against water penetration and are more expensive than windows that don't have fins.

34.    During the From August 17, 2017 through at least December 12, 2017 or longer Travelers refused to include in it's estimate like kind windows with fins.  Rather, it attempted to force Residences at Olde Town to accept lesser quality and less expensive windows.

35.    Travelers sought to force Residences at Olde Town to accept costs of repair based upon using windows that did not have fins.  Costs of repair of windows affected the cost of stucco.  This cost would be less if windows without fins were used.

36.     At all times relevant, both ASR and Travelers used a software program known as Xactimate. Xactimate provides a method of estimating the reasonable cost of repair for the covered loss at the property.

37.     On or about September 14, 2017, in addition to producing an Xactimate estimate, ASR produced to Travelers' subcontractor estimates for stucco repair, and provided an engineer's report relating to the stucco.

38.     Travelers refused to agree to pay reasonable charges for roof anchors and ridge cap and ice shield in its estimate even though these were reasonably required. These anchors are required by OSHA when roofers are working above 6'. Items required by roofing manufacturers were not included.

39.     Travelers unreasonably estimated the number of workers to be less than those that would reasonably be required to repair the property.

40.     Travelers unreasonably estimated a method of operation with waste disposal containers that was not feasible under the circumstances. Specifically, Travelers required numerous smaller dumpsters on the property when it knew that there was no space to put said dumpsters and still operate the complex. Instead a telehandler was needed. Further, Travelers knew that given the amount of work and the amount of dumpsters, there would be a safety hazard to the residences and visitors at the property. Furthermore, the parking is reserved for residents and is setback from the curbs.

41.     Travelers did not include scaffolding for overhead protection necessary to protect residents and visitors from overhead falling debris which was not accounted for in the limited amount of hours they included for the telehandler.

42.     Travelers also did not include a telehandler large enough to reach over the carports. This is a safety requirement by OSHA.

43.     Travelers resisted the use of additional telehandler hours and/or scaffolding required to complete the project safely under OSHA requirements.

44.     Travelers unreasonably estimated the job duration to be less than what would be reasonably required.

45.     On or about September 21, 2017, ASR communicated to Travelers that due to cooler weather being expected, there would be increased costs of repair. Travelers did not take that cooler weather into account in any regard.

46.     On or about October 13, 2017, Travelers communicated the basis for its positions which were set forth in an email from Andrew Condie of Stephenson Consulting Group.

47.     On or about October 27, 2017, ASR obtained additional window bids due to special window glass existing which were later forwarded to Travelers.

48.     On or about November 4, 2017, Travelers informed ASR that "due to the number of issues in various trades which we didn't seem to be getting any closer on, we have asked another GC to provide a second competitive proposal for the job."

49.     At all times relevant, Colorado law contained in Bulletin B-5.4 and C.R.S. § 10-4-120 prohibit an insurance company requiring that appraisals or repairs of property be made by specific businesses or that the use or the failure to use a particular repair business may result in non-payment or delayed payment. Such law includes other rules and prohibitions such as misinforming a beneficiary or claimant to induce the use of a particular repair business.

50.    In 2017, Travelers contacted Dynamic Roofing and Construction ("Dynamic") and upon information and belief, subsequently provided information to Dynamic that would cause it to perform the work at a cost that was less than that which was estimated by ASR.

51.    Dynamic's estimate included windows with fins.

52.    Dynamic's estimate was higher than the estimate of Travelers.  Even though Dynamic had reason to perform the work at a price that would be acceptable to Travelers, Dynamic's estimate included additional payment of ACV in the amount of $92,276.59 for repairs to the property due to the storm on the date of loss.

53.    On or about November 7, 2017, Travelers emailed Residences at Olde Town and stated "It is unfortunate that we were unable to come to any agreement with ASR."

54.    On November 7, 2017, Shane Hamm of Homeowners Concerns confirmed the contents of his conversation with Travelers on November 7, 2017.  He confirmed that Travelers informed him that Dynamic had reviewed the property and will be finalizing numbers with Travelers.  Then, Dynamic would let Travelers and Residences at Olde Town know what is a reasonable amount for repairing the damage to the property as result of the covered loss.

55.    On or about November 17, 2017 Travelers prepared a new statement of loss and a new estimate, that estimate included additional items which it had previously refused to consider as being within the scope of the loss it was paying.

56.     On or about November 17, 2017 Travelers estimated the covered loss at residences At Old Town to be in the amount of approximately $538,000. This is in comparison to its previous estimate of approximately $476,000.

57.     Upon information and belief this new amount of approximately $538,000 was prepared based upon the input of Dynamic.

58.     On or about November 22, 2017 Travelers prepared a new estimate of covered losses at approximately $538,000. Upon information and belief this new estimate was based upon input of Dynamic.

59.     On or about November 28, 2017, Travelers sent payment of an additional $92,276.59 to Residences at Olde Town ("Travelers' second estimate").  This payment was accompanied by a statement of loss.

60.     The statement of loss set forth in the paragraph 55 approximately $92,000 was owed by travelers.

61.     This payment was for items which Travelers knew or should have known were owed on August 21, 2017 and this amount was owed as of August 17, 2017 when Travelers sent its first estimate.

62.     On or about November 8, 2017, Dynamic previously represented on behalf of Travelers to Residences at Old Town that Dynamic would be working on behalf of the Residences at Olde Town and not Travelers.

63.     On or about December 12, 2017 Dynamic prepared an estimate and transmitted it to Residences at Old Town ("Dynamic Estimate"). This estimate was in the amount of approximately $571,000.

64.     The Dynamic Estimate included for the first time what appears to be payment for thin windows and stucco and use of a telehandler.

65.     The Dynamic Estimate includes less time than is reasonably required and less expense than is reasonably required for labor and supervision.

66.     The Dynamic Estimate includes less money than he is reasonably required for roofing items such as anchors flas0hing and ice water shield.

67.     After receipt of the Dynamic Estimate Travelers could have and should have engaged in a discussion with ASR concerning the new estimate which now existed. It should have reconsidered all items in its previous estimate.

68.     After discussion with Dynamic, Travelers decided that it owed substantial money for actual cash value but did not describe how it calculated this amount.

69.     Upon information and belief, Travelers used Dynamic to prepare an estimate of the cost to estimate covered losses at the property.

70.     The actions of Travelers were to force or give incentive to Residences at Old Town to use Dynamic over a chosen contractor.

71.     As of the date of filing of this complaint the estimate of contractor ASR is approximately $735,000.

72.     As of the date of filing this complaint the estimate of Dynamic is approximately $571,000.

73.     As of the date of filing this complaint, the original estimate by travelers in August 2017 was approximately $478,000.

### IV.  FIRST CLAIM FOR RELIEF
### (Breach of Contract)

74.     Plaintiff, Residences at Olde Town, incorporates by reference each and every allegation heretofore made within its Complaint into its First Claim for Relief.

75.     The policy is a contract by which Travelers agreed to pay, on a replacement cost basis, for direct physical loss caused by hail and wind to the structures at the property.

76.     The roofs, siding, and other structures at the property suffered direct physical loss necessitating repair and replacement as a result of the covered loss on or about the date of loss.

77.      Travelers breached the policy by failing to timely pay and/or failing to estimate and agree to pay the benefits owed to Residences at Olde Town for the covered loss at the property.

78.     Travelers' breach of policy has caused Residences at Olde Town damages and losses of all sums due under the policy.

### V.  SECOND CLAIM FOR RELIEF
### (Violation of C.R.S. § 10-4-1115 and 1116)

79.     Plaintiff, Residences at Olde Town, incorporates by reference each and every allegation heretofore made within its Complaint into its Second Claim for Relief.

80.     Travelers unreasonably delayed payment of $92,276.00. Travelers had reviewed the claim with the aid of a consultant who went to the property on at least two occasions and travelers went to the property on one occasion. Travelers further engaged in communication directly and through their consultant with ASR and so knew that it had

omitted items from its estimate that reasonably should have been included within the estimates of Travelers.

81.    Travelers used a consultant. This is common practice of Travelers. The purpose of such practice is to pay less on a claim.

82.    Travelers should have used a consultant to get an unbiased and reasonable estimate but it did not.

83.    Travelers should have explained what information it obtained from Dynamic in order to make additional payment of approximately $92,000 but it did not.

84.    Travelers previously paid for items requested by ASR on other projects but unreasonably refused to pay for the same items under similar circumstances involving the property.

85.    Under the policy, Travelers owes benefits to Residences at Olde Town for repair of covered losses at the property including but not limited to actual cash value and replacement costs of damage to the roofs, siding, and other structures such as windows.

86.    Travelers has unreasonably failed to pay benefits owed to Residences at Olde Town and unreasonably denied its obligation to pay benefits to Residences at Olde Town without a reasonable basis.  For example, Travelers did so by refusing to pay for like kind windows with fins, as well as adequate costs of stucco through at least November 30, 2017.  Travelers did so by unreasonably delaying payment of approximately $92,000, which it admitted it owed. Travelers did so by not engaging in further review and examination of the claim after learning it had failed to estimate items that were reasonably required by a contractor such as Dynamic.

87.   In addition to the above, Travelers unreasonably misrepresented the terms and conditions of coverage and unreasonably applied a larger deductible than was permitted under its policy and under Colorado law.  This deductible was approximately $58,000 higher than was permitted.

88.   Travelers acted unreasonably by misrepresenting terms and conditions of coverage and applying a reduction in coverage without adequate notice.

89.   Travelers continues to breach its duties in acting unreasonably by the following acts, some of which are considered unfair claims settlement practices pursuant to C.R.S. § 10-3-1104(1)(h): (a) unreasonably failing to pay Residences at Olde Town's claims; (b) unreasonably failing to properly interpret its own policy; (c) unreasonably failing to make payments in a reasonable and timely manner; (d) misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue (C.R.S. § 10-3-1104(1)(h)(I)) (e) refusing to pay claims without conducting a reasonable investigation based on all available information and policy terms (C.R.S. § 10-3-1104(1)(h)(IV)); (f) not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims of which liability has become reasonably clear (C.R.S. § 10-3-1104(1)(h)(VII)); (g) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds (C.R.S. § 10-3-1104(1)(h)(VII); (h) failing to act reasonably in adjustment and resolution of the claims of Residences at Olde Town when Travelers was aware or should have been aware of its unreasonable actions and failure to consider all reasonably available information; (i) unreasonably asking or otherwise requiring

14

Residences at Olde Town to use Dynamic for its repairs; (j) unreasonably refusing to pay for like kind windows and costs associated with like kind windows.  Travelers further violated Colorado law by attempting to force and persuade Residences at Old Town to use a contractor selected by Travelers.

WHEREFORE, Plaintiff prays this Court to (a) enter judgement and award damages against Travelers and in favor of Residences at Olde Town in an amount to be determined at trial to compensate Residences at Olde Town for damages and losses suffered as a result of hail and wind damage on or about the date of loss which were covered or should have been covered by the policy; (b) enter judgment and award two times the covered benefits, reasonable attorney's fees and costs pursuant to C.R.S. § 10-3-1116 against Travelers; (c) enter judgement for prejudgment and post-judgment interest and costs and expenses as are allowed by law; and (d) Residences at Olde Town reserves its right to add a claim for exemplary damages if permitted to do so and appropriate.

## JURY DEMAND

**PLAINTIFF DEMANDS A TRIAL BY JURY OF SIX OR TWELVE ON ALL ISSUES SO TRIABLE.**

Respectfully submitted: February 23, 2018

**THE FRANKL LAW FIRM, P.C.**

*s/ Keith Frankl*
Keith Frankl
7400 E. Orchard Road, Suite 225-S
Greenwood Village, CO  80111
Telephone:  (303) 300-2029
Fax:  (303) 300-2059
Email:  kfrankl@frankllawfirm.com
*Attorneys for Plaintiff*

*Plaintiffs' Address:*
5192 Ammons Court
Arvada, CO 80002