# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00461-WJM-NYW

RESIDENCES AT OLDE TOWN SQUARE ASSOCIATION

    Plaintiff,

v.

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA
    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This matter comes before the court for recommendation on Plaintiff Residences at Olde Town Square Association's ("Plaintiff" or "Residences") Motion to Amend Complaint to Add Claim for Exemplary Damages ("Motion to Amend" or "Motion"), filed November 21, 2018. *See* [#42]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b) and the Memorandum dated November 26, 2018 [#46]. This court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, having carefully reviewed the Motion and associated briefing, the docket, and applicable law, this court respectfully **RECOMMENDS** that the Motion to Amend be **DENIED**.

## BACKGROUND

This case arises out of an insurance dispute between Plaintiff and Defendant Travelers Casualty Insurance Company of America ("Defendant" or "Travelers"). *See generally* [#1]. Plaintiff "is a homeowners' association which manages real property [i.e., (the "condominiums")]" located in Arvada, Colorado, and is the policyholder of Travelers's insurance policy 680-004F97913A ("the policy"). *See* [*id.* at ¶¶ 1-3]. On or about May 8, 2017, the condominiums

"suffered a covered loss" under the policy and submitted a claim to Travelers for hail damage to the condominiums. *See* [*id.* at ¶ 4].

Travelers first estimated the cost of repairs at $478,086.09 with an Actual Cash Value ("ACV") of loss to be $110,497.41 based on "recoverable depreciation of $160,915.30 and a deductible of $206,673.38." *See* [#1 at ¶¶ 12-15]. Residences could not determine how Travelers calculated its deductible of two-percent, but later learned that Travelers had increased the initial $7,426,300 value of the condominiums by "approximately $2,600,000 over a course of approximately four months and 13 days." *See* [*id.* at ¶ 20]. Plaintiff alleges that in violation of Colorado law and insurance regulations, Travelers never disclosed the increase in the value of the condominiums, which necessarily reduced Plaintiff's coverage and Travelers's payment obligations. *See* [#1 at ¶¶ 21-25]. Further, Residences alleges that Travelers never disclosed how it calculated the initial value of the condominiums or the increased value. *See* [*id.* at ¶¶ 26-29].

Plaintiff then received a repair estimate of $735,467.88 (which did not include permits, a deduction, or deductible) from ASR Companies Inc. ("ASR"), a contractor Plaintiff contracted with to remediate the hail damage, which was significantly higher than Travelers's first estimate. *See* [*id.* at ¶¶ 16, 18]. ASR allegedly sent its estimate to Travelers in or about September 2017. *See* [*id.* at ¶¶ 19, 30-32, 37, 45]. Disputes soon arose regarding the required repairs, the amount of time needed to complete the repairs, and what Travelers would cover. *See, e.g.*, [*id.* at ¶¶ 33-35, 38-44, 46-47].

On or about November 4, 2017, given these disputes, Travelers informed ASR and Residences that Travelers would seek another proposal from a different contractor. *See* [#1 at ¶¶ 48, 53]. Travelers then received an estimate from Dynamic Roofing and Construction ("Dynamic") of $538,000, which Travelers later tendered to Plaintiff and which included an

additional $92,276.59 ACV payment to Plaintiff for repairs that Travelers "knew or should have known were owed" at the time of its first estimate. [*Id.* at ¶¶ 50-52, 55-60]. But after receiving Travelers's second estimate of $538,000 (purportedly based on Dynamic's estimate), Dynamic submitted an estimate to Plaintiff of $571,000; Residences believed this estimate to be unreasonably low. *See* [*id.* at ¶¶ 63-66]. Residences believed Travelers intended "to force or give incentive to [Plaintiff] to use Dynamic over a chosen contractor" in violation of Colorado law. *See* [*id.* at ¶ 70].

Plaintiff initiated this action on February 23, 2018 asserting two claims under Colorado law against Travelers: (1) breach of contract, alleging that Travelers breached the terms of the policy by failing to cover the entire loss suffered by Plaintiff; and (2) unreasonable delay or denial of insurance benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115, -1116 ("statutory bad faith"), alleging that Travelers unreasonably delayed paying the additional $92,276.59 ACV payment to Plaintiff. *See generally* [#1]. Now, Plaintiff seeks to amend its Complaint to assert a claim for exemplary damages, claiming that it recently learned in discovery that Travelers fraudulently misrepresented its relationship with Dynamic and how it calculated the value of the condominiums at the time of the covered loss. *See* [#42; #53]. Defendant opposes the requested, arguing first that amendment is futile because exemplary damages are not available for breach of contract and statutory bad faith claims. *See* [#52]. Nevertheless, Defendant also contends that even if Plaintiff can seek exemplary damages, it does not make the requisite showing of entitlement to exemplary damages. *See* [#52]. The Motion is now ripe for Recommendation, and I turn to the Parties' arguments below.

**LEGAL STANDARD**

Ordinarily, Rule 15(a)(2) and Rule 16(b)(4) of the Federal Rules of Civil Procedure would apply when, as here, a party seeks to amend its pleading after the deadline set in the Scheduling Order. *See Gorsuch, Ltd., B.D. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). But Colo. Rev. Stat. § 13-21-102 governs proposed amendments concerning exemplary damages. Pursuant to section 13-21-102(1.5)(a), a plaintiff cannot move for exemplary damages in the initial pleading and may seek to amend the pleading to add a claim for exemplary damages "only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure" and if she establishes prima facie proof of a triable issue. In finding that there is no direct conflict between this statute and the Federal Rules of Civil Procedure and that application of the statute would not necessarily result in forum shopping or the inequitable administration of the law, courts in this District have held that § 13-21-102, rather than Rules 15(a) or 16(b), controls whether to permit the amendment of a claim for exemplary damages. *See Wollam v. Wright Medical Group, Inc.*, No. 1:10-cv-3104-DME-BNB, 2012 WL 4510695, at *9 (D. Colo. Sept. 30, 2012) (applying Colo. Rev. Stat. § 13-21-102 to motion to amend to add exemplary damages claim); *Witt v. Condominiums at the Boulders Ass'n,* No. 04-cv-02000-MSK-OES, 2006 WL 348086, at *7 (D. Colo. Feb. 13, 2006) (finding the court must give effect to Colorado statute in evaluating whether exemplary damages claim properly brought in diversity action). *See also Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *2 (D. Colo. Jan. 17, 2007) (applying *Jones v. Krautheim,* 208 F. Supp. 2d 1173, 1179 (D. Colo. 2002)). Even with the application of § 13-21-102, however, the court may deny a motion to amend to add exemplary damages because of delay, bad faith, undue expense, or other demonstrable prejudice. *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) (citation omitted).

Section 13-21-102 provides that an award of exemplary damages is permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13-21-102(1)(a). The purpose of the award of punitive damages is to punish the wrongdoer, not compensate for injuries. *See Lira v. Shelter Insurance Co.*, 913 P.2d 514, 517 (Colo. 1996). A "finding that the elements of fraud [are] established also establishe[s] the 'circumstances of fraud' required for punitive damages." *Berger v. Sec. Pac. Info. Sys., Inc.*, 795 P.2d 1380, 1386 (Colo. App. 1990) (upholding award of exemplary damages where the plaintiff prevailed on her fraudulent concealment claim at trial).

As to the requirement of a prima facie showing, "[p]rima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Stamp*, 172 P.3d at 449 (citation omitted). Such proof is established by "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Id.* (quoting *Leidholt v. Dist. Court*, 619 P.2d 768, 771 n.3 (Colo. 1980)). Parties may offer this proof in the form of discovery and by evidentiary means. *Id.* "The question of whether the plaintiff has established sufficient proof to add a claim for exemplary damages lies within the sound discretion of the trial court." *Id.* (citation omitted). In reviewing the Motion to Amend, this court considers only the "preliminary question" of whether Plaintiff has made a prima facie showing that the injury complained of is attended by "circumstances of fraud," not whether it will ultimately prevail. *Am. Econ. Ins. Co.*, 2007 WL 160951, at *4.

## ANALYSIS

### I. Futility

Defendant first contends that Plaintiff's proposed amendment is futile because Colorado law does not allow for exemplary damages on breach of contract claims or statutory bad faith claims. *See* [#52 at 3]. Rather, a plaintiff may seek exemplary damages only if it asserts an

5

underlying tort claim, and because Plaintiff does not do so here, it cannot move to seek exemplary damages. *See* [*id.* at 3-4]. Further, Travelers asserts that exemplary damages are unavailable for statutory bad faith claims, because such claims already include a penalty, i.e., two times the covered benefit, which serves the same purpose as exemplary damages, and such claims are not actions for actual damages. *See* [*id.* at 4-9]. I consider these arguments in turn.

  ***Breach of Contract:*** Defendant is correct that Residences may not seek exemplary damages for its breach of contract claim. "Exemplary damages may only be awarded pursuant to statute in Colorado[,]" and "are only recoverable in actions at law and not in actions at equity." *Peterson v. McMahon*, 99 P.3d 594, 597 (Colo. 2004). "Exemplary damages are recognized as being unusually harsh on wrongdoers and are intended to serve as an example to the wrongdoer and others that such conduct will not be tolerated by society." *Sherwood v. Graco, Inc.*, 427 F. Supp. 155, 158 (D. Colo. 1977). Because of these principles, the Colorado Supreme Court has held that exemplary damages are not available for ordinary breach of contract claims because the purpose of compensating the individual harmed by the breach is at odds with the purpose of exemplary damages. *See Mortg. Fin., Inc. v. Podleski*, 742 P.2d 900, 902-03 (Colo. 1987); *see also Colo. Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786, 792 (Colo. App. 1991) ("Punitive damages . . . are not recoverable for breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable[,]" such as bad faith breach of an insurance contract). Accordingly, Residences likely could not seek exemplary damages if all it asserted in this action was a breach of contract claim. *See Hensley v. Tri-QSI Denver Corp.*, 98 P.3d 965, 967 (Colo. App. 2004) ("[Exemplary damages] cannot be recovered for an ordinary breach of contract.").

The circumstances of this case, however, are slightly different. Plaintiff asserts a breach of contract claim and a statutory bad faith claim. [#1]. As observed by the Colorado Supreme Court, a claim for exemplary damages "is not formally attached to or predicated on any specific claim." *Guarantee Tr. Life Ins. Co. v. Estate of Casper by & through Casper*, 418 P.3d 1163, 1171 (Colo. 2018) (allowing an instruction regarding exemplary damages in lawsuit involving claims for breach of contract, bad faith breach of an insurance contract, and statutory bad faith). With this principle in mind, this court considers Defendant's argument that a statutory bad faith claim precludes a separate claim for exemplary damages because such damages are duplicative.

***Statutory Bad Faith:*** I respectfully disagree with Defendant that exemplary damages are unavailable due to Plaintiff's statutory bad faith claim. Travelers first argues that statutory bad faith claims allow for remedies of two times the covered benefit, which serves the same purpose as punitive damages. *See* [#52 at 4-5]. But this court finds misplaced Travelers's reliance on *Lexton-Ancira Real Estate Fund, 1972 v. Heller ("Heller")*, 826 P.2d 819, 822 (Colo. 1992). There the Colorado Supreme Court held that a plaintiff could not recover both treble damages for violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-113(2)(a), and exemplary damages pursuant to Colo. Rev. Stat. § 13-21-102 for the same conduct, because both served to punish and deter a defendant and a plaintiff could not recover twice for the same injury. *See Heller*, 826 P.2d at 822-23.

But this court respectfully disagrees that statutory bad faith claims, which provide recovery of two times the covered benefit, serve to punish and deter defendants, rendering exemplary damages duplicative as pronounced in *Heller*. Indeed, as Plaintiff argues, *see* [#42 at 9; #53 at 1-6], the Colorado Supreme Court recently held that a statutory bad faith claim "is <u>not</u> a claim for <u>punitive damages or a penalty</u>." *Guarantee Tr. Life Ins.,* 418 P.3d at 1169 (emphasis added) (citing

7

*Rooftop Restoration, Inc. v. Am. Family Mut. Ins. Co.*, 418 P.3d 1173, 1176-77 (Colo. 2018)).[1]
Thus, the ability to recover two times the covered benefit does not preclude an award of exemplary damages predicated on a statutory bad faith claim.

Relatedly, this court respectfully disagrees with Travelers that a statutory bad faith claim does not constitute a claim for actual damages. *See* [#52 at 8-9]. In support of its position Travelers relies on *Etherton v. Owners Insurance Company*, No. 10-CV-00892-PAB-KLM, 2013 WL 5443068, at *3 (D. Colo. Sept. 30, 2013). But *Etherton* again classified remedies for statutory bad faith claims as penalties, which *Rooftop Restoration Inc.*, 418 P.3d at 1176-77 explicitly rejected, and considered only whether a plaintiff could recover damages on its breach of contract claim <u>plus</u> two times that amount under a statutory bad faith claim, i.e., three times the covered benefit, *see Etherton*, 2013 WL 5443068, at **2-3. This court also finds misplaced Travelers's reliance on *Hansen v. Am. Family Mut. Ins. Co.*, 383 P.3d 28, 38 (Colo. App. 2013), *rev'd on other grounds* 375 P.3d 115 (Colo. 2016); *Toy v. Am. Family Mut. Ins. Co.*, No. 12-CV-01683-PAB-MJW, 2014 WL 321213, at *4 (D. Colo. Jan. 29, 2014); and *Gerald H. Phipps, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 14-CV-01642-PAB-KLM, 2015 WL 5047640, at *2 (D. Colo. Aug. 27, 2015), for the proposition that the covered benefit does not constitute actual damages. The Colorado Supreme Court recently held that if an insured proves a successful statutory bad faith claim, he is "entitled to both . . . an award of attorney fees and court costs, and two times the covered benefit,

---

[1] Though acknowledging *Rooftop Restoration, Inc. v. Am. Family Mut. Ins. Co.*, 418 P.3d 1173, 1176-77 (Colo. 2018), Travelers nonetheless argues that Colorado courts continue to categorize statutory bad faith claims as imposing a penalty on insurers. *See* [#52 at 7 & n.2]. But Travelers cites to cases announced <u>before</u> *Rooftop Restoration Inc.*, including *Estate of Casper v. Guarantee Trust Life Ins. Co.*, 421 P.3d 1184, 1195 (Colo. App. 2016), which did not, as Travelers contends, classify statutory bad faith claims as penal in nature, *see id.* at 1195 ("[W]e disagree that the statute is penal and instead conclude that section 10-3-1116 is remedial in nature."). Counsel are reminded of their obligations under Colo. R.P.C. 3.3 that "(a) A lawyer shall not knowingly: . . . (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."

both of which qualify as actual damages." *Guarantee Tr. Life Ins. Co.*, 418 P.3d at 1172 (emphasis added).[2] Thus, I conclude that Plaintiff's statutory bad faith claim does not preclude a claim for exemplary damages, and now consider whether Plaintiff has satisfied the applicable standard for amendment.

## II.     Prima Facie Evidence

Residences argues that Travelers's claims-handling conduct amounts to fraud in violation of relevant Colorado insurance statutes. *See* [#42 at 2-9; #53 at 3-5]. "Colorado courts apply the common definition of fraud, or 'a false representation of a material existing fact, made with knowledge or utter disregard of its falsity, with the intent to induce another to rely upon the representation and to take detrimental action thereon.'" *In re Weaver*, 579 B.R. 865, 913 (Bankr. D. Colo. 2018) (quoting *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 214–215 (Colo. 1984)). In addition, Colorado law defines insurance fraud to include, *inter alia*, the knowing submission of statements "contain[ing] false material information or withhold[ing] material information" regarding an insurance claim. Colo. Rev. Stat. § 18-5-211(1)(e).

As evidence of fraud, Residences argues that Travelers concealed its valuation increase of the condominiums which increased Plaintiff's deductible and reduced its coverage; that Travelers knew there were flaws with its increased valuation of $10.4 million, as evidenced by its informing Plaintiff's insurance broker that its estimation tool was unreliable and its internal correspondence acknowledging the flawed valuation; and that Travelers misrepresented that Dynamic was only a validating contractor, as Dynamic sought the repair job from Residences and Travelers concealed its verbal agreement to pay Dynamic more than its estimate. [#42 at 2-9; #53 at 3-5]. In reviewing

---

[2] Travelers again neglects to mention this controlling precedent from the Colorado Supreme Court—precedent this court must utilize in diversity actions such as this one. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008) (stating that federal court "are to follow decisions of the state's highest court" in diversity actions).

9

Plaintiff's assertions, this court must view the evidence in a light most favorable to Residences. *Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005); *Eurpac Service Inc. v. Republic Acceptance Corp.*, 37 P.3d 447, 452 (Colo. App. 2000). The evidence must only be enough for a prima facie showing of "circumstances of fraud" attending Travelers's conduct, not enough to "defeat a motion for summary judgment or to result in a jury verdict in Plaintiff's favor." *Hendrickson v. Doyle*, No. 14-CV-02013-WJM-KLM, 2015 WL 2106225, at *3 (D. Colo. May 4, 2015).

Travelers argues that Plaintiff fails to proffer prima facie evidence that Travelers's conduct was willful and wanton.[3] *See* [#52 at 11-12]. Rather, Travelers contends, Plaintiff's prima evidence concerns conduct that is either merely negligent or "a prudent business decision made in the interest of conserving insurance funds," "ignores Travelers'[s] duty to its policyholders to conserve first-party insurance funds by resisting unfounded claims," or concerns a business relationship between Travelers and Dynamic. *See* [*id.* at 12-14]. Further, Travelers asserts that Plaintiff's prima facie evidence belies its contention that Travelers forced it to work with Dynamic or hid the inflation of the condominiums' value from Plaintiff. *See* [*id.* at 14-15].

As to the increased valuation of the condominiums to $10.4 million, Residences argues that it learned during discovery that Travelers used a system called "ITV" to increase the value of

---

[3] Colorado law defines "'willful and wanton conduct' [to] mean[] conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Colo. Rev. Stat. § 13-21-102(1)(b). Travelers is correct that Plaintiff fails to establish that Travelers's conduct was willful and wanton, but this deficiency does not preclude Residences from seeking exemplary damages based on its assertions that "circumstances of fraud" attended Travelers's claims-handling conduct. Thus, this court will consider Travelers's arguments as countering Plaintiff's "circumstances of fraud" allegations, rather than whether Travelers acted willfully or wantonly.

the condominiums. *See* [#42 at 6; #43-1 at 92:16-20[4]]. Plaintiff continues that Travelers acknowledged the "unreliability of this system in its own correspondence to Plaintiff's [insurance] broker" and later admitted that it miscalculated the condominiums' initial valuation. *See* [#42 at 6; #42-4; #42-5]. Plaintiff contends that Travelers never fully disclosed all documents relating to its increased valuation of the condominiums in violation of Colo. Rev. Stat. § 10-4-111, which requires insurers to provide summary disclosure forms to insureds that contain a simple explanation of the most salient coverages and exclusions of the insurance policy. *See* Colo. Rev. Stat. § 10-4-111(1); *see also id.* § 111(4) (deeming a deceptive or unfair trade practice an insurer's failure to maintain summary disclosure forms).

While Travelers acknowledged that it discovered that the condominiums were underinsured by over $2,000,000, *see* [#42-5], Residences fails to provide prima facie evidence that Travelers actively concealed this information on the date of loss "to inflate the deductible and decrease coverage," [#42 at 9]; *cf. Baker v. Wood, Ris & Hames, Prof'l Corp.*, 364 P.3d 872, 883 (Colo. 2016) (stating the elements of fraudulent concealment to include, among others, knowledge of the concealed material fact and the intention that the concealed material fact be acted upon). For instance, the January 4, 2018 correspondence to Plaintiff's insurance broker <u>does not</u> concede the unreliability of ITV, but rather explains that the costs generated "are only estimates and are not a substitute for a more detailed appraisal survey by a licensed appraiser." *See* [#42-4 at 1]. Travelers later explained the increased renewal premium and deductible to Plaintiff's insurance broker in an email dated January 4, 2018. *See* [#42-5]. Further, in a letter dated December 22, 2017, Travelers informed Plaintiff of an increase in its renewal premium and deductible, *see* [#42-6]; and though Travelers allegedly did not get an appraisal prior to issuing this letter, it is unclear

---

[4] When citing to a transcript, this court cites the document number generated by the Electronic Court Filing ("ECF") system but the page and line numbers generated by the transcript.

to this court that Defendant violated relevant Colorado law, *see* Colo. Rev. Stat. § 10-4-111(3)(b) ("Every insurer . . . shall furnish the required disclosure form to: . . . (b) Policyholders of any renewal policy when there are changes in major coverages and exclusions or changes in factors considered in cancellation, nonrenewal, and increase in premium situations"). And as Travelers contends, it does not appear that Travelers increased the premium or deductible during the claim-handling process at issue here. In sum, this court does not find that "circumstances of fraud" attended Travelers's increase in the valuation of the condominiums.

Next, Residences takes issue with Travelers's relationship with Dynamic, held out by Travelers as a validating contractor. Residences argues that Travelers concealed its verbal agreement with Dynamic to perform the repairs for a price higher than estimated by Travelers, *see, e.g.*, [#42-1 at 37:18-38:5, 39:3-10, 40:12-21, 42:5-13; #42-2 at 154:21-25, 155:1-6, 156:10-18], and then attempted to force Residences to use Dynamic over ASR, *see, e.g.*, [#42-7; #42-8; #42-9; #42-10]. Residences asserts that Travelers's conduct in this regard violated Colorado law, which prohibits insurers from "[d]irectly or indirectly requir[ing] that appraisals or repairs to the property be made or not be made by a specified repair business" and/or "[m]isinform[ing] a . . . claimant to induce the use of a particular repair business[.]" Colo. Rev. Stat. §§ 10-4-120(2)(a), (h). For many of the same reasons as discussed above, I find that Residences fails to adduce prima facie evidence that Travelers fraudulently concealed its agreement with Dynamic or that Travelers misinformed Residence to induce its use of Dynamic over ASR.

The evidence produced by Residences suggests that Dynamic provided Travelers an estimated cost of repairs to the condominiums for $571,000—an estimate Travelers found reasonable. *See* [#42-1 at 37:18-25, 39:2-10, 40:12-21, 41:19-21, 42:5-13; #42-2 at 154:21-25, 155:1-6, 156:10-18; #42-7 at 1; #42-8 at 1; #42-10]. It also appears that this amount was higher

than the $538,000 estimate Travelers produced to Plaintiff. *See, e.g.*, [#42-2 at 156:10-158:1]. But Travelers's claim adjuster Kenneth Bergner testified that this was normal because Dynamic's estimate was merely a validation number and Travelers remained flexible to increase its supplemental payments to Residences. *See, e.g.*, [*id.* at 154:9-25, 156:21-157:3, 158:23-159:11]. Indeed, Travelers's correspondences with Residences (provided by Plaintiff) indicate that Travelers informed Plaintiff that it could contact Dynamic but was "still free to use any contractor [it chose]," and that Travelers's estimate was not a final position and remained flexible. *See* [#42-7 at 1]; *cf.* [#42-1 at 41:19-24 (Dynamic testifying that Travelers "had some wiggle room if any numbers were not spot on"); #42-2 at 153:20-24 ("There was no discussion of [Dynamic] doing the work other than the fact that they can if they want. They have to talk to [Residences]. I can't tell [Residences] you have to use this contractor."), 154:4-9; #42-8 at 1 ("You are still welcome to use any contractor you like to perform the repairs")].

Moreover, while Defendant informed Plaintiff that it considered Dynamic's estimates to be an accurate reflection of the repair costs, *e.g.*, [#42-7 at 1; #42-8 at 1; #42-10], the record before this court, even construed in a light most favorable to Plaintiff, does not suggest that Travelers misinformed Residences to induce it to use Dynamic. Indeed, the evidence cited by Plaintiff represents that Dynamic sought a presentation with Plaintiff's board of directors, *see* [#42-9], but that this never occurred, *see* [#42-1 at 40:711 ("I did not get a meeting with the board . . . so I don't know where the claim ended after that.")]. Again, I find that Plaintiff fails to produce prima facie evidence that "circumstances of fraud" attended Travelers's relationship with Dynamic.

**CONCLUSION**

For the reasons set forth herein, this court respectfully **RECOMMENDS** that:

13

(1) Plaintiff's Motion to Amend [#42] be **DENIED**.[5]

DATED: March 8, 2019

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

[5] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).