IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0461-WJM-NYW

RESIDENCES AT OLDE TOWN SQUARE ASSOCIATION,

    Plaintiff,

v.

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,

    Defendant.

---

**ORDER ADOPTING, AS MODIFIED, MARCH 8, 2019 RECOMMENDATION OF MAGISTRATE JUDGE AND DENYING PLAINTIFF'S MOTION TO AMEND**

---

    This matter is before the Court on United States Magistrate Judge Nina Y. Wang's Recommendation dated March 8, 2019 (the "Recommendation"; ECF No. 58), which recommended that this Court deny Plaintiff's Motion to Amend Complaint to Add Claim for Exemplary Damages ("Motion to Amend") (ECF No. 42). The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

    Plaintiff and Defendant each filed a timely objection to different portions of the Recommendation (ECF Nos. 59 (Plaintiff) and 60 (Defendant)), and each responded to the other's objection (ECF Nos. 64 (Plaintiff) and 65 (Defendant)). Defendant's objection challenges only the Recommendation's reasoning, not its result. In essence, Defendant asks the Court to modify the Recommendation but preserve its result.

    For the reasons set forth below, the Court generally agrees with Defendant's objection, although the Court views the matter somewhat differently than both

Defendant and the Magistrate Judge. The Recommendation is therefore adopted as modified, Plaintiff's objection is overruled, Defendant's objection is sustained, and Plaintiff's Motion to Amend is denied.

## I. LEGAL STANDARD

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." An objection to a recommendation is properly made if it is both timely and specific. *United States v. 2121 East 30th St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059. In conducting its review, "[t]he district judge may accept, reject, or modify the [recommendation]; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

However, if a magistrate judge's ruling is nondispositive, the Court must affirm the ruling unless it finds that the ruling is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Ariza v. U.S. West Commc'ns, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (internal quotation marks omitted). The "contrary to law" standard permits "plenary review as to matters of law," *see* 12 Charles Alan Wright *et al.*, Federal Practice & Procedure § 3069 (2d ed., Apr. 2016 update), but the Court will

set aside a magistrate judge's order only if it applied the wrong legal standard or applied the appropriate legal standard incorrectly, *see Wyoming v. U.S. Dep't of Agric.*, 239 F. Supp. 2d 1219, 1236 (D. Wyo. 2002). In short, "[b]ecause a magistrate judge is afforded broad discretion in the resolution of non-dispositive . . . disputes, the court will overrule the magistrate judge's determination only if his discretion is abused." *Ariza*, 167 F.R.D. at 133.

Judges in this District remain split whether a magistrate judge's ruling on a motion to amend to add a claim for exemplary damages is dispositive or nondispositive. *See Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*, 2018 WL 1755784, at *1 (D. Colo. Apr. 12, 2018); *Grabau v. Target Corp.*, 2008 WL 179442, at *5 (D. Colo. Jan. 17, 2008). The Magistrate Judge treated the matter here as dispositive. (*See* ECF No. 58.) Plaintiff has followed suit. (*See* ECF No. 59 at 3–4.) Defendant, however, briefly asserts the standard of review for nondispositive rulings, without explaining why the Magistrate Judge was wrong to treat the issue as dispositive. (*See* ECF No. 60 at 2.)

Under the circumstances, the Court will give Plaintiff the maximum benefit of the doubt and review the matter as if dispositive (or never referred to the Magistrate Judge in the first place). Thus, the Court reviews the matter *de novo*.

## II. BACKGROUND

Plaintiff is a homeowners association that manages a condominium complex in Arvada, Colorado. (ECF No. 1 ¶ 2.) Defendant was Plaintiff's property and casualty insurer as of May 8, 2017, the date on which a hailstorm damaged the condominiums. (*Id.* ¶¶ 3–4, 31, 75.) Plaintiff and Defendant have been unable to agree on the amount Defendant owes to Plaintiff for repairs. (*See generally id.*) Plaintiff thus sues Defendant

3

for breach of contract and unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-4-1115 and -1116. (*Id.* at 12–15.) Plaintiff's complaint announces that Plaintiff "reserves its right to add a claim for exemplary damages if permitted to do so and appropriate." (*Id.* at 15.) Plaintiff did not plead exemplary damages in the first instance because Colorado does not allow it: "A claim for exemplary damages . . . may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue." Colo. Rev. Stat. § 13-21-102(1.5)(a).[1]

About nine months into the case, Plaintiff filed its Motion to Amend, arguing that discovery had uncovered a basis for finding that Defendant had behaved with knowing dishonesty during the adjustment of the claim. (ECF No. 42.) Defendant responded that amendment would be futile because exemplary damages are not available on either of Plaintiff's causes of action; and, in any event, Plaintiff had not presented a prima facie case. (ECF No. 52.)

As to Defendant's first argument, the Magistrate Judge agreed to the extent exemplary damages were tied to breach of contract, but not to the extent they were tied to unreasonable delay or denial of insurance benefits. (ECF No. 58 at 6–9.) In other words, the Magistrate Judge reasoned that unreasonable delay/denial is a proper anchor for an exemplary damages claim, assuming the plaintiff has stated a prima facie case. But, as to Defendant's second argument, the Magistrate Judge agreed with

---

[1] Obviously, parties in federal court do not exchange initial disclosures under Colorado Rule of Civil Procedure 26. To avoid forum shopping, Colorado federal courts apply this statute as if in reference to Federal Rule of Civil Procedure 26.

4

Defendant that Plaintiff had not stated a prima facie case.  (*Id.* at 9–13.)  For that reason, the Magistrate Judge recommended denial of the Motion to Amend.

Plaintiff's objection does not challenge the Magistrate Judge's reasoning regarding the availability (or not) of exemplary damages as a remedy for breach of contract or unreasonable delay/denial of insurance benefits.  (*See* ECF No. 59.) Plaintiff argues only that the Magistrate Judge erred in finding a lack of a prima facie case.

Defendant's objection argues that the Magistrate Judge erred in finding that exemplary damages are available for an unreasonable delay/denial claim.  (ECF No. 60.)  But Defendant otherwise supports the Magistrate Judge's recommended outcome.  (*See* ECF No. 65.)

### III.  ANALYSIS

Whether punitive or exemplary damages (Colorado law uses those terms interchangeably) are an available remedy for the unreasonable delay/denial cause of action created by Colorado Revised Statutes §§ 10-3-1115 and -1116 is a question of Colorado law.  "It is the duty of the federal . . . trial court[] to ascertain and apply the state law where . . . it controls [the] decision."  *Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944).  "Where no controlling state decision exists," this Court must engage in the "ventriloquial function" of "predict[ing] what the state's highest court would do."  *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003).

No Colorado state-court decision answers whether punitive damages are an available remedy for an unreasonable delay/denial claim.  This Court therefore must predict how the Colorado Supreme Court would rule on the question.

5

**A.     The Statutory Text**

The Court finds that this matter is settled by the text of the two relevant statutes. First, the claim for unreasonable delay or denial of insurance benefits is established as follows: "A first-party [insurance] claimant . . . whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." Colo. Rev. Stat. § 10-3-1116(1). Second, the exemplary damages statute makes such damages available "[i]n all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." *Id*. § 13-21-102(1)(a).

Faced with these two statutes, the Court predicts that the Colorado Supreme Court would hold that a claim premised on recovering "reasonable attorney fees and court costs and two times the covered benefit," *id*. § 10-3-1116(1), is not a claim for "a wrong done to the person or to personal or real property," *id*. § 13-21-102(1)(a). Or, at the very least, it is no more a claim for "a wrong done to the person or to personal or real property" than the underlying claim for breach of insurance contract—and the law is settled that punitive damages are unavailable for breach of contract. *See Mortg. Fin., Inc. v. Podleski*, 742 P.2d 900, 904–05 (Colo. 1987) ("*Podleski*").

**B.     *Estate of Casper*: "Personal Injury"**

The Court's prediction receives indirect but substantial support from *Guarantee Trust Life Insurance Co. v. Estate of Casper*, 418 P.3d 1163 (Colo. 2018) ("*Estate of Casper*"). The plaintiff in *Estate of Casper*, while still living, won a verdict that included damages for breach of contract, bad faith breach of insurance contract, unreasonable

6

delay/denial, and also punitive damages. *Id.* at 1166. But the plaintiff died nine days after the jury verdict, before the trial judge had entered judgment, *id.*, and Colorado's survival statute significantly limits the types of damages a dead plaintiff can recover "in tort actions based upon personal injury," Colo. Rev. Stat. § 13-20-101(1). One of the questions before the Colorado Supreme Court was whether the plaintiff's unreasonable delay/denial claim was a "tort action[] based upon personal injury." *Estate of Casper*, 418 P.3d at 1169–70. The Colorado Supreme Court answered in the negative:

> [A] claim under section 10-3-1116(1)—which seeks recovery of unreasonably delayed or denied insurance benefits—is not a "tort action based upon personal injury." § 13-20-101(1). While [the plaintiff] did put forth evidence of personal injuries, that evidence was not required for success on his statutory claim, nor was it required to calculate the damages awarded to him under the statute. Indeed, all that he was required to prove for his statutory claim was that [the insurance company] unreasonably delayed or denied a benefit owed to him. Because personal injury is wholly irrelevant to a claim under section 10-3-1116(1), such a claim is not a "tort action based upon personal injury."

*Id.*

A well-motivated lawyer likely could conceive some way in which unreasonable delay/denial is not a "tort action based on personal injury" for purposes of the survival statute (§ 13-20-101(1)) but is nonetheless "a wrong done to the person or to personal or real property" for purpose of the exemplary damages statute (§ 13-21-102(1)(a)). But any such argument would be highly strained. The Court frankly sees no plausible way of holding the Colorado Legislature had different things in mind as between the phrases "personal injury" and "a wrong done to the person," especially when the latter is enumerated separately from "a wrong done . . . to personal or real property." There is nothing left for "a wrong done to the person" to be other than a "personal injury."

7

So the unreasonable delay/denial claim, if it fits anywhere in the exemplary damages statute, must somehow qualify as "a wrong done . . . to personal or real property." But the nature of the cause of action is inextricably linked with an underlying contract. It certainly requires proof beyond what is required to prove breach of contract, *see Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018), but without a contract, there can be no "covered benefit" and therefore no claim.

Of course, the same may be said of the common-law tort of bad faith breach of insurance contract—and punitive damages *are* available for bad faith claims. *See Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 682 (Colo. 1994). Thus, common-law bad faith must be "a wrong done to the person or to personal or real property." Colo. Rev. Stat. § 13-21-102(1)(a). This is probably unremarkable, because common-law bad faith is governed by "traditional tort principles of compensation for injuries *actually* suffered," *id*. at 677 (emphasis in original), such as

> the amount of any excess judgment[,] . . . certain attorney fees, interest on the wrongfully withheld funds, . . . lost earnings, loss of future earnings and diminished earning capacity. . . . damage to the insured's credit[,] . . . emotional distress, pain and suffering, inconvenience, fear and anxiety, and impairment of the quality of life.

8A John W. Grund *et al.*, *Colo. Practice Series: Personal Injury Torts and Insurance* § 56:19 (3d ed., Sept. 2018 update) (footnotes omitted).

The statutory delay/denial claim, by contrast, ignores causation. Its award of "reasonable attorney fees and court costs" might be viewed from a causal perspective (*i.e.*, as repayment of the transaction costs incurred in bringing the claim) but it does not compensate for the injury that prompted the lawsuit, only for the costs of the lawsuit itself. The award of "two times the covered benefit," for its part, is a legislatively-

8

declared amount of liquidated damages—by definition unconnected to the claimant's actual losses. Indeed, it is connected *only* to contracted-for coverage. *See Estate of Casper*, 418 P.3d at 1170 ("While [the plaintiff] did put forth evidence of personal injuries, that evidence was not required for success on his statutory claim, nor was it required to calculate the damages awarded to him under the statute."). Accordingly, the delay/denial injury is no more "a wrong done . . . to personal or real property," Colo. Rev. Stat. § 13-21-102(1)(a), than a breach of contract claim, for which punitive damages are not available.

**C.    *Estate of Casper*: "Not Formally Attached," and "Actual Damages"**

As noted, *Estate of Casper* holds that "a claim under section 10-3-1116(1)—which seeks recovery of unreasonably delayed or denied insurance benefits—is not a 'tort action based upon personal injury'" for purposes of Colorado's survival statute. 418 P.3d at 1169–70. This supports the prediction that an unreasonable delay/denial claim is also not a claim for "a wrong done to the person or to personal or real property" under the exemplary damages statute.

The Court recognizes, however, that two other holdings in *Estate of Casper* seem to imply that punitive damages *are* awardable on an unreasonable delay/denial claim. The Court will address each in turn.

1.    <u>"Not Formally Attached"</u>

At one point, *Estate of Casper* remarks that a claim for punitive damages "is not formally attached to or predicated on any specific claim." 418 P.3d at 1171. Contrary to Plaintiff's argument (ECF No. 64 at 2), this is not a basis for finding that punitive damages may be awarded for an unreasonable delay/denial claim.

When *Estate of Casper* offered this "not formally attached" observation, it was

9

answering a much different question.  As noted, the plaintiff in that lawsuit died after verdict but before entry of judgment, so the question was the effect of the survival statute on the jury's award.  The defendant argued that the plaintiff's entire lawsuit should have been viewed as a "tort action based upon personal injury" within the meaning of the survival statute, making at least the punitive damages portion of the verdict unrecoverable in light of the plaintiff's death.  *See id.* at 1171.  The Colorado Supreme Court disagreed, instead concluding that a different portion of the survival statute applied.  *Id.*  Specifically, the survival statute separately addresses punitive damages and prohibits awarding them against a dead defendant.  *See* Colo. Rev. Stat. § 13-20-101(1).  The Colorado Supreme Court held that this specific mention of punitive damages is what should control, rather than any connection to punitive damages that might be implied through the survival statute's separate reference to "tort actions based upon personal injury."  And because the bar against punitive damages applied to dead defendants, not dead plaintiffs, it had no application because the defendant (the insurance company) was not "dead."  *Estate of Casper*, 418 P.3d at 1171.

This would have been enough to resolve the issue, but the Colorado Supreme Court offered more.  It noted that its resolution "avoid[ed] the need to determine whether the award of punitive damages is in some sense attached to one of [the plaintiff's] particular claims."  *Id.*  And, in that context, the court observed that, as treated in the exemplary damages statute, "a claim for punitive damages . . . is not formally attached to or predicated on any specific claim."  *Id.*  "Therefore," the court concluded, "the survival statute limits punitive damages only [when the defendant has died], regardless of whether the plaintiff also brings a tort action based on personal injury."  *Id.*

10

The Colorado Supreme Court's observation—that the exemplary damages statute imposes no requirement on the pleader to attach the proposed exemplary damages claim to any existing cause of action—is correct. But that does not mean that no such requirement exists *anywhere*. This Court is confident that the Colorado Supreme Court's observation, made in the context of explaining why, under the circumstances, it did not need to decide the cause of action to which the exemplary damages claim attached, was not meant to upend decades of Colorado jurisprudence holding that punitive damages are available for some causes of action but not others. *See Podleski*, 742 P.2d at 904–05 ("The only claim before the trial court at the conclusion of the trial was a claim for breach of contract. The compensatory award for said breach was the proper remedy. The judgment as to exemplary damages was improper and is accordingly reversed.").

Moreover, the exemplary damages statute elsewhere contemplates attachment to a claim, at least by the time of the damages award. The statute provides that the trial court may increase exemplary damages up to a certain multiplier "if it is shown," among other things, that "[t]he defendant has continued the behavior or repeated the action *which is the subject of the claim against the defendant* in a willful and wanton manner." Colo. Rev. Stat. § 13-21-102(3)(a) (emphasis added). Necessarily, a court applying this section must determine what "the claim against the defendant" is.

Accordingly, *Estate of Casper*'s statement about the lack of a statutory requirement to "formally" attach the exemplary damages claim to a particular cause of action provides no basis for concluding that exemplary damages may be awarded for unreasonable delay/denial of insurance benefits. Indeed, such an argument is missing

a premise that, once stated, shows the entire argument's unsoundness. The argument must be: punitive damages are not attached to a particular cause of action; therefore, punitive damages may be awarded for any cause of action; therefore, punitive damages may be awarded for an unreasonable delay/denial cause of action. But the Colorado Supreme Court has already disavowed the middle premise, *see Podleski*, 742 P.2d at 904–05, so "not formally attached" provides no support for the outcome Plaintiff seeks.

2. "Actual Damages"

Immediately following its analysis of how punitive damages should be treated for purposes of the survival statute, *Estate of Casper* took up a separate argument from the insurance company, namely, "that attorney fees and costs awarded under section 10-3-1116(1) [the unreasonable delay/denial statute] are not 'actual damages,' meaning such fees and costs cannot be considered when calculating punitive damages, because an award of attorney fees and costs under section 10-3-1116(1) constitutes a penalty." 418 P.3d at 1171. The Colorado Supreme Court ultimately disagreed, holding that the trial court properly "consider[ed] those attorney fees and court costs as actual damages when calculating the permissible amount of punitive damages." *Id.* at 1172. This might suggest that an unreasonable delay/denial claim is an appropriate anchor for punitive damages. But the court's summary of the insurance company's argument leaves certain matters implicit that must be stated explicitly to appreciate the court's holding—and whether the holding has any effect here.

First, the reference to "actual damages" is a reference to the exemplary damages statute, which states that exemplary damages "shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party." Colo. Rev. Stat. § 13-21-102(1)(a). "Actual damages awarded" means "compensatory damages

12

after reduction for comparative negligence and pro rata liability." *Lira v. Davis*, 832 P.2d 240, 246 (Colo. 1992).

Second, the jury in *Estate of Casper* had awarded punitive damages far in excess of the plaintiff's actual damages, so the trial judge was required to reduce the punitive damages to no more than the amount of actual damages—in turn requiring the trial judge to calculate "actual damages."[2]

Third, the trial judge calculated actual damages at just shy of $999,000, *inclusive* of the attorneys' fees and costs awarded under the unreasonable delay/denial statute (totaling about $330,000). The judge then awarded punitive damages in an amount equal to actual damages.[3]

Given these circumstances, the insurance company might have argued that unreasonable delay/denial is not a claim for which punitive damages are available as a remedy, so *nothing* awarded for the unreasonable delay/denial claim—whether attorneys' fees, court costs, or two times the covered benefit—may be considered "actual damages" when calculating punitive damages. But the insurance company did not advance this argument.[4] Instead, it argued only that the attorneys' fees and costs

---

[2] This is described in the Colorado Court of Appeals's opinion, 421 P.3d 1184, 1187–88 (Colo. App. 2016), but not the Colorado Supreme Court's opinion.

[3] The trial court order is available at 2014 WL 7894583 (Colo. Dist. Ct. Oct. 30, 2014). Interestingly, this amount *also* included breach-of-contract damages, which one would expect not to be part of any punitive damages calculation. Apparently this raised no eyebrows because, as noted by the Court of Appeals, "[t]he parties . . . agreed that the economic damages awards for the breach of contract, bad faith breach of an insurance contract, and statutory unreasonable denial of benefits claims were duplicative and that economic damages totaled $50,000." 421 P.3d at 1187 n.1.

[4] No such argument is mentioned in the Colorado Supreme Court's opinion, and this Court has confirmed from the merits briefs in that appeal that the insurance company never made the argument.

were not actual damages because they are a statutory penalty. *See Estate of Casper*, 418 P.3d at 1171.

The Colorado Supreme Court disposed of this argument by drawing on another case decided the same day, which reasoned that the unreasonable delay/denial statute is not "penal" for purposes of the statute of limitations governing claims for penalties. *Id.* at 1171–72 (citing *Rooftop Restoration, Inc. v. Am. Family Mut. Ins. Co.*, 418 P.3d 1173, 1177 (Colo. 2018)). The court extended *Rooftop Restoration* to the argument before it, holding that none of the remedies available for unreasonable delay/denial—attorneys' fees, costs, and "two times the covered benefit"—are penalties for purposes of punitive damages calculations, but are instead "actual damages." *Id.* at 1172.[5] "Consequently, it was appropriate for the trial court to consider those attorney fees and court costs as actual damages when calculating the permissible amount of punitive damages owed to the [plaintiff]." *Id.*

In context, this portion of *Estate of Casper* says nothing about the question currently before this Court: whether an unreasonable delay/denial claim is "a wrong done to the person or to personal or real property." Colo. Rev. Stat. § 13-21-102(1)(a). The defendant in *Estate of Casper* never asked that question and so the Colorado Supreme Court had no cause to consider it, much less answer it. For the reasons explained in Parts III.A & B, above, the Court predicts that the Colorado Supreme Court,

---

[5] Strictly speaking, whether "two times the covered benefit" is a penalty as opposed to "actual damages" was not before the court, because the insurance company only challenged the $330,000 awarded as attorneys' fees and costs. But, two years earlier, the Colorado Supreme Court had passingly referred to the "two times the covered benefit" award as "a statutory penalty." *Am. Family Mut. Ins. Co. v. Hansen*, 375 P.3d 115, 116–17 (Colo. 2016); *see also id.* at 119 (referring to "a penalty of two times the covered benefit"). Through *Estate of Casper*, the court may have been trying to get ahead of any lingering doubts about how it viewed the "covered benefit" damages.

14

if presented with the question directly, would hold that unreasonable delay/denial is not a wrong done to the person or to personal or real property, and so it may not be the basis for punitive damages.[6]

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Magistrate Judge's March 8, 2019 Recommendation (ECF No. 58) is ADOPTED as modified herein;

2. Plaintiff's objection (ECF No. 59) is OVERRULED;

3. Defendant's objection (ECF No. 60) is SUSTAINED; and

4. Plaintiff's Motion to Amend Complaint to Add Claim for Exemplary Damages (ECF No. 42) is DENIED.

---

[6] At times, Plaintiff makes much of *Estate of Casper*'s declaration that "reasonable attorney fees and court costs and two times the covered benefit" are a measure of "actual damages," 418 P.3d at 1171–72, as if that settles the availability of punitive damages. (*See* ECF No. 64 at 1.) But "actual damages" is a term of art in the exemplary damages statute. In the context of calculating the maximum amount of exemplary damages, it means "compensatory damages after reduction for comparative negligence and pro rata liability." *Lira*, 832 P.2d at 246. If Plaintiff means to say that punitive damages may be awarded up to the total of *all* "compensatory" amounts awarded by the jury, then punitive damages may, in effect, be awarded for breach of contract so long as the jury finds for the plaintiff on breach of contract and at least one other claim for which punitive damages is available (*e.g.*, bad faith, fraud, etc.). For example, if the jury awards $50,000 for breach of contract and $50,000 for bad faith, it may—under Plaintiff's view—assess punitive damages of up to $100,000, even though no punitive damages would be available for breach of contract standing alone. The Court is confident that the Colorado Legislature did not intend such a result. And the question never arose in *Estate of Casper* because the parties agreed that compensatory damages for breach of contract and bad faith were duplicative. *See* n.3, above.

Dated this 12th day of September, 2019.

BY THE COURT:

_____
William J. Martínez
United States District Judge